2:20-CR- Law Offices of

WING & PARISI

Linda M. Parisi
917 G Street
Sacramento, CA 95814
Telephone: (916) 441-4888
Facsimile: (916) 441-1575

Attorney for Matthew Goyder

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

MATTHEW GOYDER,

        Defendant.
_____/

Case No. 2:20 -CR-0212 DJC

SENTENCING MEMORANDUM

Dated: August 15, 2024
Time:  9:00 a.m.
Judge: Hon. Daniel J. Calabretta

I. Defendant Matthew Goyder, by and through his undersigned counsel, submits his formal objection to the Pre-Sentence Report and this Sentencing Memorandum. Mr. Goyder asks this Court to consider that he has accepted responsibility for his conduct, has been a contributing member of society, has been gainfully employed, loved and cared for his family and had no prior criminal record, in fashioning a sentence that is sufficient but not greater than necessary. Here, the community and the purposes of punishment will be best served by a sentence of 15 years of incarceration combined with a lengthy/lifetime term of probation, along with whatever appropriate terms of probation the Court determines.

II.   Procedural Background
Mr. Matthew Goyder plead guilty to Three Counts of Sexual Exploitation of a Child in violation of 18 U.S.C. §§2251[a] in Counts One, Two and Three..

III.   FORMAL OBJECTIONS

**Paragraph 3:**

The report indicates that the jail records did not provide details, but it should be noted that there are not any disciplinary issues and/or violations from his time in jail.

**Offense Conduct**

**Paragraph 42-45 – Victim 1; Paragraph 51-55 Victim 2; 23-28 –Paragraph 61 - 64 Victim 3**

Paragraph 42    Two levels are added because some of the images were of a minor under the age of 12.

Paragraph 44    Two levels are added because the defendant downloaded and distributed the child pornography.

Paragraph 45    Two levels since Mr. Goyder misrepresented his identity.

These level increases should not be added as the conduct described to increase the level is the conduct that forms the basis of the offense.

Paragraph 51    Two levels are added because some of the images were of a minor under the age of 12.

Paragraph 52    Two levels are added because the defendant downloaded and distributed the child pornography.

Paragraph 54 – Directed sexual conduct for a 4 level increase

Paragraph 55    Two levels since Mr. Goyder misrepresented his identity.

Four levels should not added as the conduct identified forms the basis of the offense

These level increases should not be added as the conduct described to increase the level is the conduct that forms the basis of the offense.

Paragraph 61    Two levels are added because some of the images were of a minor under the age of 12.

Paragraph 62 – Directed sexual conduct for a 2 level increase

Paragraph 63    Two levels are added because the defendant downloaded and distributed the child pornography.

Paragraph 64    Two levels since Mr. Goyder misrepresented his identity.

These level increases should not be added as the conduct described to increase the level is the conduct that forms the basis of the offense.

**Multiple Count Adjustment:** Units are assigned pursuant to USSG §3D1.4(a), (b) and (c). One unit is assigned to the group with the highest offense level. One additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious. One-half unit is assigned to any group that is 5 to 8 levels less serious than the highest offense level. Any groups that are 9 or more levels less serious than the group with the highest offense level are disregarded.

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| Count 1 | 40 | 1.0 |
| Count 2 | 44 | 1.0 |
| Count 3 | 40 | 1.0 |

**Total Number of Units:** 3.0

**Plus 4 level enhancement**

**Greater of the Adjusted Offense Levels Above:** **44**

**Increase in Offense Level:** The offense level is increased pursuant to the number of units assigned by the amount indicated in the table at USSG §3D1.4. **+3**

The use of possessing sadistic or masochistic conduct and the vulnerability of the victim is a double counting for essentially the same conduct. The level computation should be reduced by 6 levels [4 for sado masochistic and 2 for vulnerability].

Impermissible double counting occurs when a court applies a provision of the Guidelines that takes into account conduct or harm that has already been fully taken into account by application of another provision of the Guidelines. See, e.g., *United States v. Joey*, 845 F.3d 1291, 1296–97 (9th Cir. 2017). Impermissible double counting can also occur when a court applies a provision of the Guidelines that takes into account conduct or harm that has already been accounted for as an element of the crime of conviction and the Guideline identifies a specific offense level for that crime, rather than specific offense levels based on a range of conduct. See, e.g., *United States v. Hornbuckle*, 784 F.3d 549, 553–54 (9th Cir. 2015) (comparing U.S.S.G. § 2G1.3(b)(4)(A) to 18 U.S.C. § 1591(a), which has been incorporated into U.S.S.G. § 2G1.3(a)).

In December of 2012, the Sentencing Commission produced a report to Congress based upon a multi-year study of sentencing child pornography defendants. That report can be found at http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses. That report lists and analyzes a striking number of problems with the guidelines as they apply to non-production child pornography offenses.

In that report, the Sentencing Commission makes a number of recommendations that are relevant to this case. The Commission believes that most of the enhancements that are being applied against Mr. McClendon apply to virtually every "possession" defendant and, therefore, do not distinguish meaningfully between the least culpable and most culpable defendants and result in overly severe sentences for most "possession" defendants. Instead of using the enhancements currently in the guidelines, the Commission recommends that the guidelines be changed in substantial ways.

The Report contains an analysis of the current guidelines:

> The current sentencing scheme in §2G2.2 places a disproportionate emphasis on outmoded measures of culpability regarding offenders' collections (e.g., a 5-level enhancement under §2G2.2(b)(3)(B) for possession of 600 or more images of child pornography, which the typical offender possesses today). At the same time, the current scheme places insufficient emphases on other relevant aspects of collecting behavior as well as on offenders' involvement in child pornography communities and their sexual dangerousness. As a result, the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior.

(Report p. 321.)

> The current penalty scheme in non-production cases focuses primarily on an offender's child pornography collection. Three of the six enhancements in §2G2.2 concern the content of offenders' collections: (1) a 2-level enhancement for possession of images of a pre-pubescent minor, (2) a 4-level enhancement for possession of sado-masochistic images or other depictions of violence, and (3) a 2- to 5-level enhancement for collections of a certain number of images (with increments ranging from ten or more images to 600 or more images). Because these three provisions

4

> (including the maximum 5-level enhancement for possession of 600 or more images) <u>now apply to a majority of offenders</u>, they add a significant 11-level cumulative enhancement based on the content of the typical offender's collection. The current guideline thus does not adequately distinguish among most offenders regarding their culpability for their collecting behaviors. Furthermore, the 11-level cumulative enhancement, in addition to base offense levels of 18 or 22, <u>results in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior.</u>

(Report p. 322-323, emphasis added.) Each of these three enhancements is being applied to Mr. McClendon and these enhancements result in an irrationally severe sentence.

> In particular, four of the six enhancements in §2G2.2(b) — together accounting for 13 offense levels — now apply to the typical non-production offender. In fiscal year 2010, §2G2.2(b)(2) (images depicting pre-pubescent minors) applied in 96.1 percent of cases; §2G2.2(b)(4) (sadomasochistic images) applied in 74.2 percent of cases; §2G2.2(b)(6) (use of a computer) applied in 96.2 percent of cases; and §2G2.2(b)(7) (images table) applied in 96.9 percent of cases. Thus, sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders.

(Report p. 316.)

**Paragraph 37**

Mr. Goyder has done nothing to impede the investigation in this case and has, in fact, behaved to the contrary by being cooperative with law enforcement's investigation.

**Offense Computation**

<u>**Paragraph 41 - 76, Adjusted Offense Level [Subtotal]**</u> `The subtotal is listed as 40 – 44 and it should be 34. With the reduction for Acceptance of Responsibility [-2] and Assistance [-1]

**The Total Adjusted Offense should be 31**

<u>**Paragraph 48**</u>        **Total Offense Level**        The level is listed as 40 but it should be 34 – Calculated as follows:

*Count 1*

*Base level*              32
*Specific Offense*        +2
*Directed Conduct*        +2

5

```
Sent Pictures           +2
Misrepresentation       +2

Total                   40
```

Should be reduced by 6 as Specific Offense, Directed Conduct and Misrepresentation are included in the offense and therefore it is a dual use of facts and double counting. The Total should be 34.

**Total should be     34**

Count 2

```
Base level              32
Specific Offense        +2
Directed Conduct        +2
Directed Conduct        +4
Sent Pictures           +2
Misrepresentation       +2

Total                   44
```

Should be reduced by 10 as Specific Offense, Directed Conduct [times 2] and Misrepresentation are included in the offense and therefore it is a dual use of facts and double counting. The Total should be 34.

**Total should be     34**


Count 3

```
Base level              32
Specific Offense        +2
Directed Conduct        +2
Directed Conduct        +4
Sent Pictures           +2
Misrepresentation       +2

Total                   40
```

Should be reduced by 6 as Specific Offense, Directed Conduct and Misrepresentation are included in the offense and therefore it is a dual use of facts and double counting. The Total should be 34.

**Total should be     34**

```
Accept Responsibility   -2
Assisted                -1
```

**Total Offense Level should be 31**

**Paragraph 68/70/71 – Multiple Count Adjustment**
The use of possessing sadistic or masochistic conduct and the vulnerability of the victim is a double counting for essentially the same conduct. The level computation should be reduced by 2 levels.

6

As noted because the offense involved the use of the computer is recommended that it not be added in that it is a dual use of the same fact that describes the conduct of the offense.

The computation is increased by 3 as a result of multiple counts – the defense objects as this is a dual use of the same facts as Mr. Goyder has plead to three counts and is eligible for punishment on each. As a result, it would be unfair to further increase his potential sentence by the use of the same facts.

**Paragraph 72 – Chapter Four Enhancement**

Mr. Goyder engaged in conduct during a period of aberrant behavior – he is not someone who was contacted/prosecuted by law enforcement and then continued in the behavior. Mr. Goyder has psychological and emotional issues that are at the foundation of these events and the events were the result of those issues. The defense objects to a 5 level increase.

**Paragraph 87 – Pending Charges**

The reference to pending charges is not appropriate as the reference is to state charges that are a restatement of the current charges with same factual basis that are technically still pending in state court.

**Paragraphs 90-95; 99-101  Mental and Emotional Health**

Mr. Goyder reports that his mother was verbally, mentally and physically abusive to him. He would be disciplined with beatings until he blead. Furthermore, she engaged in abusive conduct of "examining" his penis in a painful and humiliating fashion.

Mr. Goyder reports that he was victimized as a child in that he suffered sexual abuse at the hands of other Boy Scouts and on another occasion, he was sexually victimized by another boy.

As a result of this repeated childhood trauma, at the hands of people outside of his family and at the hands of his mother, who was supposed to protect and nurture him rather than abuse and further victimize him, Mr. Goyder carries with him significant mental health issues regarding his emotional abilities and psychological responses.

Mr. Goyder suffers from anxiety and takes medication for the condition. Mr. Goyder has sought therapy for his mental health issues.

Application Note 3 of USSG §5K2.20 lists five considerations for the Court to consider in determining the application of this departure:

1. Mental and emotional conditions;
2. Employment record;
3. Record of prior good works;
4. Motivation for committing the crime;
5. Efforts to mitigate the effects of the offense.

This Circuit has been open-minded as to the application of this departure and has eschewed formalistic application in determining if these requirements had been met. *See, e.g.*, United States v. Green (9th Cir. 1997) 105 F. 3d 1321.

7

Mr. Goyder has serious emotional and psychological conditions as a result of the complex childhood trauma he suffered at the hands of his mother and as a result of feeling abandoned by his father.

Mr. Goyder has been gainfully employed his adult life and has provided for his family. He has not been involved in criminal conduct and this series of events is more the product of his childhood trauma than "normal criminal motivation" of financial gain and the like.

In any event, even if technically unavailable to Mr. Goyder, the questions raised in the Application note are important ones to consider in determining the extent of a variance based upon Mr. Goyder's life situation, including his depression/anxiety, his employment, his lifelong commitment to provide for his family, the fact that he did well in school, his father and brother's support, his understanding of the nature of the crime itself and his acceptance of responsibility for his conduct.

**Consideration of § 3553(a) Factors**

*While the Court must give the guidelines due consideration, the Court must also independently consider the factors under Section 3553(a). If the Court finds that a different sentence will better accomplish the goals of sentencing, it is under a duty to vary from the Guidelines. Kimbrough. 552 U.S. at 101.*

   **C.     The Second Chance Act:**

*The Congress passed and the President signed the "Second Chance Act of 2007: Community Safety Through Recidivism Prevention." In brief, this act tasks the various agencies responsible for the release of persons incarcerated for the violation of law to assess the needs of the inmates under their charge and to establish a plan for each of them to assist them in returning to the community and becoming self-sustaining and law abiding citizens. A good overview of the act and suggestions concerning its implementation is found in 20 Federal Sentencing Reporter, Number 2 [December 2007]. As Michael Pinard noted in his discussion in that volume, A Reentry-Centered Vision of Criminal Justice, id.,103-109 at 104-105 that the logic of this Act must inevitably direct the attention of those who dominate the "front end" of the Criminal Justice system, the lawyers and the Court.*

*Cognizant of this imposed duty on and opportunity for, among others, the Bureau of Prisons and the federal Probation Department, I would suggest that we can craft a plan dealing with both the sentence of Mr. Goyder to include all of the factors which should be taken into consideration to reach the goal of the Act; i.e., the successful re-integration of Mr. Goyder into his community and his becoming a self-sustaining and law-abiding citizen.*

   **1.   USSG §5K2.0 -**

*In 2003, the Sentencing Commission finally institutionalized the practice of several circuit courts which had approved departures for what was termed a "convergence of factors," United States v. Hines (9th Cir. 1994) 26 F. 3d 1469 or a "combination of factors," United States v. Cook (9th Cir. 1991) or some other terminology to signify the use of more than one factor listed in the guidelines which may not, of its own weight, support a departures but which, in combination with other also insufficiently demonstrated factors in combination resulted in a mitigated sentence.*

   **Paragraphs 134-135**

8

*The Court May Impose a Sentence that is at a Variance from the Guidelines Based on a Policy Disagreement*

*In Kimbrough, 552 U.S. 85 (2007), the United States Supreme Court established that the Guidelines should not exercise talismanic sway over district courts. A court must not presume that the guidelines are reasonable and must independently weigh the considerations that govern a particular sentencing factor, as well as all of the remaining factors in 18 U.S.C. § 3553(a).*

*If the district court finds that the§ 3553(a) factors support an outside-Guidelines sentence, it may deviate from the Guidelines. See Rita v. United States, 551 U.S. 338. 351. 127 S. Ct. 2456, 168 L.Ed. 2d 203 (2007). Permissible deviations include variations "based solely on policy considerations, including disagreements with the Guidelines." See Kimbrough v. United States, 552 U.S. 85, 101, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007).*

*United States v. Ibarra-Sandoval, 265 F. Supp. 3d 1249, 1252 (2017).*

*While a district court's sentence must be reasonable, Gall, 552 U.S. at 51 (appellate courts review district court sentences for reasonableness), the Supreme Court has emphasized that policy deviations from the Guidelines need not be based on a particular defendant's individual circumstances. All that is needed to justify a variance – even in a run-of-the-mill case – is the sentencing court's disagreement with the guidelines. Spears v. United States, 555 U.S. 261, 263-64 (2009). In real world terms, it means that courts are free to categorically disagree with the guidelines and substitute a different result "which, in [the judge's] judgment, corrects the disparity." Id. at 265.*

*The Supreme Court has recognized that a party's argument for a sentence outside the calculated guideline range may "take either of two forms." Rita v. United States. 551 U.S 338. 344, 127 S. Ct. 2456. 168 L. Ed. 2d 203 (2007). A party may "argue within the Guidelines' framework, for a departure," id. (emphasis in original), or a party may "argue that, independent of the Guidelines, application of the factors set forth in 18 U.S.C. § 3553(a) warrants a [different] sentence." Id.*

*The Ninth Circuit has repeatedly acknowledged that "extraordinary circumstances are not needed to justify a sentence outside the guidelines range and [the Court of Appeal] must give due deference to the district court's decision that the sentencing factors warrant a particular variance." United States v. Ruff, 535 F.3d 999, 1002 (9th Cir. 2008); United States v. Carty, 520 F.3d 984, 991, 993 (9th Cir. 2008) (en banc); see also Gall v. United States, 552 U.S. 38, 47-50 (2007). "This standard reflects the common theme throughout the Supreme Court's recent sentencing decisions – to 'breathe life into the authority of district court judges to engage in individualized sentencing.'" Ruff, 535 F.3d at 1002 [internal quotation marks omitted].*

*In determining an appropriate sentence, this Court must not only consider the advisory sentencing range set forth in the Sentencing Guidelines, it must also take account of all of the other statutory factors set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220 (2005). Under Booker, the Sentencing Guidelines themselves are just one among a number of enumerated sentencing factors. Id.*

*In giving weight to Section 3553(a)'s sentencing criteria, the overarching goal is that the Court impose a sentence "sufficient, but not greater than necessary" to accomplish the purposes of sentencing established by Congress. Kimbrough v. United States, 552 U.S. 85, 101 (2007) (quoting 18 U. S. C. §3553(a)). Under 18 U.S.C. §3582, the Court is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."  Key considerations include the nature and*

*circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the need to avoid unwarranted sentence disparities among similarly situated defendants, and the need to provide restitution to the victims.*

*THE NEED FOR THE SENTENCE IMPOSED TO –REFLECT THE SERIOUSNESS OF THE OFFENSE, AND PROMOTE RESPECT FOR THE LAW*

*The seriousness of this offense is adequately reflected in the felonious conviction of child exploitation and the resulting requirement for sexual offender registration. Mr. Goyder does not deny the revolting and shameful nature of the offense*

### A. THE OFFENSE GUIDELINE IN THIS CASE RESULTS IN A SENTENCE THAT IS EXTREMELY HARSH AND UNWORTHY OF DEFERENCE

The Sentencing Guidelines must be correctly determined, and the defense has no objection to the mechanical calculation of the guidelines in this case. However, as noted in the PSR, the guideline recommends a sentence at the statutory maximum without regard for any of Mr. Goyder's unique factors. It fails to give any credit for any acceptance of responsibility for this crime, much less the extreme remorse and acceptance of responsibility that he has shown. It fails to acknowledge that he has always worked and been a productive member of society and has provided for his family. It fails to acknowledge that he has been a good parent to his two daughters This sentence, as recommended by the PSR, would result in Mr. Goyder being in prison for the rest of his life without any possibility of parole or release.

1. HISTORY OF THIS GUIDELINE

In assessing whether the guideline produces a reasonable sentence in this case, it is important to consider whether the guideline comes from. Since this crime has a mandatory minimum, the guidelines are keyed to that mandatory minimum and rise from there. Accordingly, the Sentencing Commission is not at all independent from the mandatory minimums from Congress. Rather, this guideline marches lockstep with such mandatory minimums. USSC, <u>Overview of Mandatory Minimum Penalties in the Federal Criminal Justice System</u> p. 16 (2017) ("[T]he Commission has incorporated

10

mandatory minimum penalties into the guidelines since their inception.")

For child pornography offenses, the guidelines adjustments were also *dictated* by Congress. USSC, The History of the Child Pornography Guidelines pp. 23, 26 (2009). So, the entire guideline in this case functions as an extension of Congress's desire to control sentencing in these types of offenses. This means that the Commission has no independent authority to decide whether, for example, the two-level adjustment for use of a computer, which was mandated by Congress in *1996*, still represents a true aggravating factor in the offense given changes in technology. In fact, the Sentencing Commission has recommended that Congress reconsider several aspects of the child pornography guidelines to make them more fair, but Congress has not taken action. USSC, Federal Child Pornography Offenses pp. 320-330 (Dec. 2012) [recommendations to Congress]; USSC, Overview of Mandatory Minimum Penalties p. 15 (2017) (noting that Sentencing Commission recommended a reworking of child pornography sentences because of unfair harshness, but Congress failed to act). The production guideline incorporates the same problems that mandatory minimums raise: it attempts to restrict judicial power to address cases individually, it puts more power in the hands of the executive branch, which can drive the sentence by choosing the particular charge, and it is subject to political pressures.

The Sentencing Commission looked at offender behaviors in its 2012 Report to Congress on Federal Child Pornography Offenses. It looked at PSRs to attempt to gain "insight into the types of production offenders being sentenced in federal court beyond that offered by the data concerning the specific offenses characteristics. . . ." Id., at 262. It specifically tried to determine "how often offenders were physically present with their victims when the production occurred." It found that in the fiscal year at issue (2010), only 10.5% of offenders were like Mr. Goyder – not present, and not remotely aiding and abetting other adult offenders who were present. The Commission calls this a "not present, non-contact offense" and it is an extreme minority among production cases. This issue of non-physical presence is not captured in the current guideline.

11

## 2. APPLICATION OF THE GUIDELINE IN THIS CASE RESULTS IN A SENTENCE THAT IS MUCH TOO HARSH

One other reason that Mr. Goyder's guideline range is so high has to do with the bright-line rule that increases the offense level for a victim under 12 years old. The 12-year cut-off is a proxy in the Guideline for pubescence, however there is no argument here that all the victims were post-pubescent. The guideline in this case would be the same for a victim – like this one – who was about to turn 12 years old, or for a 4-year-old, or a 4-month-old, but clearly the seriousness of the offense would be extremely different in each of those cases.

Another reason that Mr. Goyder's guideline range is so high is that his internet conduct receives the same guideline adjustments as someone who engaged in hands-on sexual abuse of a minor. Although it is clear that Mr. Goyder's conduct was criminal, wrong, and hurt the victims, it cannot be argued that it is equally serious to do what Mr. Goyder did, from thousands of miles away, as to sexually assault someone in person. It takes a much more mens rea to harm someone in front of you than to hurt them through the internet. Robbery is more serious than embezzlement. Compare USSG § 2B3.1 to § 2B1.1  Taking money from the person of another makes a theft more serious. See USSG § 2B1.1(b)(3) (upward adjustment for taking from person).     Moreover, for all Mr. Goyder did online, behind a keyboard, he has never once acted out in person. His behavior in the real world has been unimpeachable.

There is a phrase, aptly called "keyboard courage." Social scientists have studied this phenomenon, called the "online disinhibition effect." See e.g., Suler, "The Online Disinhibition Effect" CyperPsychology & Behavior Vol. 7, No. 3 (2004). The outcome is, as the Probation Officer so aptly noted in the PSR, "people say and do things in cyberspace that they wouldn't ordinarily say and do in the face-to-face world." CONFUSING CITE??? Id., at 321. This helps to explain why Mr. Goyder, who is described people who knows him as a deeply caring and empathetic person in real life,

12

could be so callous and cruel on the internet. The Internet deadens emotional feedback and non-verbal cues, it allows participants to be anonymous and separates them from consequences in their real lives, and it allows participants to avoid immediate emotional consequences for their statements.

The various ways in which the Internet warps the psychology and social connection of real life can lead to "toxic" disinhibition online. The feelings of false intimacy and vulnerability created on the internet can easily turn toxic when participants feel shamed, hurt, or disappointed. The intensity of Internet relationships, separated from the social web that usually surrounds humans, can feed a sense in which both participants drop boundaries and engage in fantasy. "Consciously or unconsciously, people may feel that the imaginary characters they 'created' exist in a different space, that one's online persona along with the online others live in a make-believe dimension, separate and apart from the demands and responsibility of the real world." Suler, at p. 323

Another reason that the guideline range will always be maxed-out for this type of offense, is that it is so easy on the internet to offend more than once. Indeed, with this type of virtual, hands-off conduct, it is almost impossible to offend only once. This means that every sexter will receive a two-level increase for reaching out, for having explicit sexual conversations, for having explicit sexual direction and/or for failing to honestly identify himself.

Two additional offense factors are not present in this Guideline but mitigate Mr. Goyder's conduct. Mr. Goyder never made any attempt to meet any of the other teenagers with which he was communicating online. He never tried to meet up with any of them. One of the victims was in California – he never tried to meet her. Further, Mr. Goyder never followed through on any of his threats to the victims. Finally, the statutory maximum guideline sentence would fail to consider any acceptance of responsibility factors, much less the extraordinary acceptance that Mr. Goyder has shown. Given the importance of acceptance of responsibility in the federal system, it is

extremely unfair that the guideline operates in this way.

### *THE OFFENSE GUIDELINE IN THIS CASE RESULTS IN A SENTENCE THAT IS EXTREMELY HARSH AND UNWORTHY OF DEFERENCE*

*The offense guideline for this crime is applicable across a wide variety of offenses, and fails to consider significant mitigating issues, such as the significant childhood abuse and trauma..*

*Accordingly, application of the guideline results in an excessive sentence for Mr. Goyder as it results in a life sentence for an individual that has no prior criminal conduct.*

FACTORS FOR CONSIDERATION

*In determining an appropriate sentence, this Court must not only consider the advisory sentencing range set forth in the Sentencing Guidelines, it must also take account of all of the other statutory factors set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220 (2005). Under Booker, the Sentencing Guidelines themselves are just one among a number of enumerated sentencing factors. Id.*

As is widely known, virtually anything at all, post Booker, is a valid issue for the court to consider when imposing a sentence. The Sentencing Reform Act, 18 U.S.C. §3551 et seq.,imposes an "overarching instruction" that district courts must select a sentence "sufficient but not greater than necessary" to achieve the sentencing goals in section 3553(a)(2). Kimbrough v. United States, 128 S. Ct.558, 570 (2007) (emphases added). Those goals include the need for the sentence to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (B) afford adequate deterrence to criminal conduct, © protect the public from further crimes of the defendant, and (D) p r o v i d e t h e defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. Gall, at 597, n. 6. To arrive at a sentence that serves 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 6 those goals without being greater than necessary, the Act directs the judge to consider the many factors listed in §3553(a)(1) - (7). These considerations are more than a laundry list of discrete sentencing factors. They comprise "a tapestry of factors, through which runs an overarching principle," the court's duty "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." United States v. Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008). Section 3553(a)(1) begins with the "broad command" to consider the nature and circumstances of the offense and the history and characteristics of the defendant. The statute also requires judges to consider the types of sentences available by statute, section 3553(a)(3), including "sentences other than imprisonment," such as probation. See Gall, id., and at 595-596 and n.4, 602 (probationary sentence reflected consideration of types of sentence available, and discussing probation as substantial restriction on freedom based on conditions of supervision). The Supreme Court envisions that a district court will always consider arguments that the Guideline sentence should not apply because the guideline itself fails properly to reflect Section 3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless. Rita, at 2468. Along with this, the Court places nothing off-limits for district courts. All the Guidelines are advisory and a judge may determine that any within Guidelines sentence is "greater than necessary" to serve the objectives of 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 7 sentencing. Kimbrough, 128 S.C. at 564. District courts may not simply defer to policies of the Commission. Rita.

14

> *In giving weight to Section 3553(a)'s sentencing criteria, the overarching goal is that the Court impose a sentence "sufficient, but not greater than necessary" to accomplish the purposes of sentencing established by Congress. Kimbrough v. United States, 552 U.S. 85, 101 (2007) (quoting 18 U. S. C. §3553(a)). Under 18 U.S.C. §3582, the Court is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." Key considerations include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the need to avoid unwarranted sentence disparities among similarly situated defendants, and the need to provide restitution to the victims.*
>
> *Specifically, 18 U.S.C. § 3553(a)(2)(A) identifies "the need for the sentence imposed ... to reflect the seriousness of the offense," and 18 U.S.C. §3553(a)(6) directs the Court "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Yet the Court finds that the current Guidelines methodology leads to just such disparities and arbitrary differences. Rodriguez, 382 F.Supp.3d at 898; Ibarra-Sandoval, 265 F.Supp.3d at 1256; Nawanna, 321 F. Supp. 3d at 948.*
>
> Similarly situated Defendants have received far lesser sentences in similar situations – especially when evaluating the prior criminal history of the individuals, as follows:

The Court must also consider whether a 90-year sentence for Mr. Goyder in this case would create an "unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). It would

To address any concern that a 15-year sentence in this case would create an unwarranted disparity with defendants like Mr. Goyder -- individuals who are convicted of online sextortion, and who have no criminal history – defense counsel sought similar cases, both in this district, and in others   The conduct of many was significantly more egregious as discussed below, or they had prior criminal history. A third conflating issue is that not all of these defendants showed the heartfelt acceptance of responsibility that Mr. Goyder has repeatedly demonstrated, as discussed below in Mr. Caputo's case, the most relevant case in this district. However, even with all of these aggravating factors in the following cohort of defendants, almost all of them received no more than 15 years in prison, and several received far less:

(1) Brian Caputo, 27 (our district) – sextorted many girls, traded their images, fought the case bitterly, including suppression motion, and two appeals, violated pretrial release and was remanded into custody, allowed to plead to lesser charge of

receipt and argue for 80 months, had prior petty theft convictions, received 15 years (14-CR-0041-LJO);

(2) Jeremy Sears, 24 – sextorted teenagers <u>and</u> distributed their pictures on publicly accessible sites – 15 years (C.D. California);

(3) Clinton Miller, 26 – conduct similar to Mr. Goyder's by an older, married father of two children – 18 years (N.D. Georgia);

(4) Jared Abrahams, 20 – hacked into teenage victims' computers, turned on web cameras, used nude photos he took to sextort the victims for more pictures, posted their nude pictures to their accounts – 18 *months* in prison (C.D. California);

(5) Donald Macarthur, 39 – contacted teenage girls and claimed to be an anorexia coach, tried to get them to starve themselves, made them make and send illegal photos – 20 years (D. Arizona);

(6) Luis Mijangos, 32 – hacked into computer of teenage girl, got her naked pictures, hacked into other computers, sextorted women including teenage girls, retaliated by posting picture when one victim shared the threats – 6 years (C.D. California);

(7) Gary Kazaryan, 27 – hacked into hundreds of computers, sextorted victims, posted the pictures on the Internet – 5 years in prison (C.D. California).

> *McCloud v United States, 2015 Lexis 4854*
>    Plead to 3 counts of 2251a and 3 counts of 2252[a][5][B] for 30 years.
> *US v. Preece, 2023 Lexis 2194*
>    Plead to 18 counts of 2252/2252 and received 25 years
> *US v Craig, 2011 Lexis 9420*
>    Plead to four counts of 2251a and received 30 years each, concurrently
> *Mullins v US 2020 Lexis 198657* – 18 counts total 30 years
> *US v Gallegos 2023* – Lexis 33726 – total 45 years 3 counts
> *US v. Martynenko 2018 LEXIS 8377* – total 45 years 3 counts
> *US v Gallegos 2023 Lexis 33726* – total 45 years 3 counts
> *US v Joubert 2015* – Lexis 2127 – Total 40 years 4 counts

Defense counsel also found a case, in which Anthony Stancl enticed teenage boys to send him naked pictures, and then used the pictures to blackmail at least seven of them into having sex with him. He received 15 years from a state court in Wisconsin,

16

and as far as counsel can tell, was never prosecuted federally. He also had a juvenile conviction for repeatedly molesting a three-year-old boy he was babysitting. Michael Joseph Gross, Update on Sextortion at Eisenhower High Feb. 25, 2010 at www.gq.com.

As a further case supporting a 15-year sentence, in United States v. Nathan Drury, Cr. S. 15-00108-GEB, which was prosecuted by the same AUSA as in this matter. Mr. Drury, 39-years-old, received 15 years in prison for "filming his sexual abuse of a child." U.S. DOJ, Press Release (April 6, 2018). The press release indicates that "Drury filmed images of a child engaged in sexually explicit conduct, including a 47-second video of a nude child who was under the age of 12. The video that Drury produced shows Drury sexually abusing the child." Id. The press release quoted the Homeland Security Special Agent in Charge for Northern California and Northern Nevada as calling Drury "a scourge to society and prey on innocent children." Id.

The government's sentencing memorandum makes it clear that Mr. Drury's guideline range was 168 to 210 months, with a mandatory minimum of 180 months, which trumped the lower guideline low-end. Cr. S. 15-00108-GEB, Doc. 51. His conduct was hands-on, with a child who was at least 25 years younger than him. He personally abused the child and filmed it. He accepted responsibility and received 15 years in prison.

Accordingly, to the extent that the Court is concerned that a 15-year sentence for Mr. Goyder would create disparity with other defendants, it need not be. Other defendants have done worse and gotten 15 years or less. Those who have gotten more than 15 years committed crimes that were much more serious, and/or were recidivist sex offenders.

Conversely, if Mr. Goyder receives 45 to 90 years in prison in this case, it will create a disparity, as defense counsel has found no other defendant with Mr. Goyder's history, nature, and circumstances, in a similar case, who has gotten that much time. Mr. Goyder would get a harsher sentence than people with prior sex offenses. He

would receive a harsher sentence than people with more serious conduct, including hands-on molestation of younger children . The only federal sex offenders who receive such sentences committed extremely serious, unconscionable offenses, and most of them had serious sex offense priors against children.

In fact, if the Court is looking for similar cases where a defendant received more than 15 years, the highest sentence that counsel could find in a similar case was Clinton Miller, a married 26 year old in another district, who received <u>18 years</u>. Consideration of Mr. Goyder's unique factors that decrease his risk of recidivism and protect the public is much higher than any comparable federal case. In our very district, a more serious case with an older offender who absolutely did not manifest any remorse and who had a criminal history received a 15-year sentence, the least that Mr. Goyder faces.

Mr. Goyder will not re-offend Mr. Goyder will never re-offend, he has learned his lesson, and he will never again do anything to compromise his family. He has already been publicly humiliated and the repercussions to his personal and professional life are never ending.

Mr. Goyder has no criminal history, a factor courts have relied upon in imposing probation or otherwise departing downward. See United States v. Artery, 555 F.3d 864 (9th Cir. 2009) (where defendant convicted of possession of pornography and where guidelines 41-51 months, court's sea sponge variance to probation not unreasonable in part because of his positive characteristics "such as his having no history of substance abuse, no interpersonal instability, no sociopathic or criminalistic attitude, his motivation and intelligence, and his support of his wife and child.") United States v. Polito, 215 Fed. Appx. 354, 2007 WL 313463 (5th Cir. Jan. 31, 2007) (where defendant convicted of possession of child pornography and guidelines 27-33 months, district court's sentence of probation with one year house arrest reasonable in part because first offense);

### F. Consideration of § 3553(a) Factors

*While the Court must give the guidelines due consideration, the Court must also independently consider the factors under Section 3553(a). If the Court finds that a different sentence will better accomplish the goals of sentencing, it is under a duty to vary from the Guidelines. Kimbrough. 552 U.S. at 101.*

In deciding the seriousness of the offense, the Court must also determine to what extent a sentence of more than 15 years in prison will address the seriousness, if at all. Mr. Goyder has recognized the seriousness of his offense in many ways. This case, and the resulting sentence, should help promote healing for the victims, achieve justice, and assure them of Mr. Goyder's accountability for his actions. A sentence of 15 years

in prison achieves all of these goals.

*The defense urges that this Court sentence Mr. Goyder to 15 years as follows: 15 years for Count 1, 15 years for Count 2 to run concurrently to Count 1 and for Count 3 15 years to run concurrently to Counts 1 and 2.*

*The recommendation for 30 years per count for an aggregate term of 90 is too harsh and does not conform to the mandates of 3553 requiring a sentence that will address "the need for the sentence imposed ... to reflect the seriousness of the offense," and 18 U.S.C. §3553(a)(6) directs the Court "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Clearly, a sentence of 90 years amounts to a life in prison sentence without the possibility of parole.*

Mr. Goyder accepted responsibility, assisted authorities by pleading guilty at an early stage, and he has expressed his deep sorrow and disgust with his actions in handwriting to this court.

Mr. Goyder understands the damage his actions have caused and he is committed to his future rehabilitation and compliance with the law. He hopes that the Court will consider this very dark time in his life with some leniency, as other courts have seen fit to do for other similarly-situated offenders. Therefore, a sentence of fifteen years in federal prison, in addition to a lifetime of supervised release, would be a justified sentence in this case, pursuant to the factors to be considered under 18 U.S.C. § 3553. The defense thanks the court for its sincere and wise consideration of this important matter.

*Given the length of the sentence/proposed sentence 15 years to 90 years, the Court should order only mandatory fines and fees. Upon release, Mr. Goyder will be significantly older, having been out of the work force in a field that is rapidly changing [computer technology] so will be unable to make any significant payments*

*Restitution in the amount of $3,181.55 is appropriate.*

*Supervised release for a term of five years to life per Count – to run concurrently is appropriate.*

FINE

Mr. Goyder objects to the imposition of a large fine. Mr. Goyder does not have the means to pay such a fine. As noted in the PSR, Mr. Goyder "has a negative monthly cash flow and is currently unemployed." Mr. Goyder is incarcerated. Mr. Goyder does not have the funds, or the means to earn the funds, to pay such a fine.

***Institutional Recommendation***: Mr. Goyder requests that he be housed at (1) FCI Sheridan, (2) FCI Lompoc or (3) at an institution in California. FCI Sheridan is the closest BOP institution to his home.

Sincerely,
/s/ Linda M. Parisi
LINDA M. PARISI


cc:  AUSA Roger Yang
       roger.yang@usdoj.gov