PHILLIP A. TALBERT
United States Attorney
ROGER YANG
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW GOYDER, <br><br> Defendant. | CASE NO. 2:20-CR-212 DJC <br><br> GOVERNMENT'S SENTENCING MEMO <br><br> DATE: August 15, 2024 <br> TIME: 9:30 a.m. <br> COURT: Hon. Daniel J. Calabretta |

**INTRODUCTION**

The United States respectfully requests that the Court sentence Matthew Goyder, who plead guilty to three counts of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a), to 600 months imprisonment (50 years), with a lifetime term of supervised release.  This sentence would be sufficient, but no greater than necessary to fulfill the sentencing goals of 18 U.S.C. § 3553(a).

**PROCEDURAL HISTORY**

On November 12, 2020, the grand jury returned a three-count indictment against Goyder, charging him with three counts of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a), one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2).  Doc. 1.

On November 18, 2022, Goyder made his initial appearance on the Indictment.  On June 22, 2023, Goyder plead guilty to all three counts of sexual exploitation of a child, in violation of 18 U.S.C.

1

§ 2251(a).

# FACTUAL BACKGROUND

A. COUNT ONE

On December 30, 2019, Victim 1 reported to the Pinellas County (Florida) Sheriff's Office that she was being extorted for sexually explicit images and videos over Snapchat by "Jackson Williams," with a usernames: "jacksonwill2020," "jacksonw5002," "jacksonwill_20," and "rywell2010." "Jackson Williams" initially contacted Victim 1 on November 29, 2019, and claimed to be a 14-year old model. At the time, Victim 1 was 12-years old. An examination of Victim 1's phone uncovered chats where the defendant, instructed her to create images and videos of herself engaged in sexually explicit conduct. Victim 1 also stated that "Jackson Williams" sent her pictures of other girls between the ages of 13 to 16 years old to show her the types of images he wanted.

Investigators discovered IP addresses used by the Snapchat accounts used to extort Victim 1, and found several IP addresses used by all three accounts. One of the IP addresses was the home of the defendant, Matthew Goyder, one was the workplace of Matthew Goyder, and the third was a dance studio related to Matthew Goyder. On March 5, 2020, a search warrant was served at the defendant's work, and agents seized the defendant's iPhone from his pocket. In addition, a search warrant on the defendant's home showed curtains and a curtain rod consistent with an image seized from the  Snapchat account pursuant to a search warrant. The defendant was detained on state charges. PSR ¶ 88.

Agents examined the defendant's iPhone, and discovered albums stored in the Private Photo Vault application. Agents eventually accessed approximately 120 albums, with 10,178 image and video files. Many of the albums were labeled with a name and a number, that appeared to be an age. Agents found an album labeled, "[Victim 1's first name] 12," for example. In that album, agents found 56 video files and 77 image files of child pornography depicting Victim 1.

B. COUNT TWO

During a May 4, 2020 review of an album titled "[Victim 2's first name] 14," in the defendant's Private Photo Vault, law enforcement found screenshots for a high school in Florida, a youth soccer team, and Victim 2's Instagram page. Law enforcement identified and located Victim 2, and

interviewed her. During that interview, Victim 2 reported that she had been victimized between 2017 and 2020 (between the ages of 14-17). The defendant contacted her as "Carson Webber" and threatened to send pictures of Victim 2 engaged in sexually explicit conduct to others she knew were on "Carson Webber's" friends list. Victim 2 estimated that she sent 50 pictures to the defendant, and approximately 100 videos, and that the defendant would send her express instructions on the types of pictures, poses, and conduct he wanted. At one point, the defendant asked her to use a belt and slap herself with it, or choke herself with it. Victim 2 reported that the defendant claimed to be 17 or 18, a model, and had two younger sisters involved in dance.

The album on defendant's phone labeled "[Victim 2's first name] 14," contained 542 files, including 152 videos. One video depicts Victim 2 engaged in sexually explicit conduct, then grabbing both ends of a belt to choke herself. Also on the defendant's phone and his laptop computer were web history artifacts and searches relating to Victim 2.

C. COUNT THREE

Snapchat records lead to the identification of the defendant also included 178 files sent from Victim 3 to the defendant's "jacksonw5002" Snapchat account, and one file from "jacksonw5002" to Victim 3. In the Private Photo Vault albums was an album labeled, "[Victim 3's first name] 13." Law enforcement identified Victim 3. Victim 3 stated that the defendant started contacting her in November 2019. At the time defendant started victimizing Victim 3, she was 12 years old. Victim 3 said the defendant claimed to be a teen model, and gained power over her by telling her where she lived and where she went to school. In the video files Victim 3 sent to the defendant, Victim 3 included banners pleading with the defendant to stop, and to delete the files.

In the album on the defendant's phone labeled "[Victim 3's first name] 13," investigators found 83 image files and 43 video files of child pornography. Doc. 20.

## SENTENCING GUIDELINES CALCULATION

**Sentencing Guidelines Calculations**

The Probation Officer calculated the Sentencing Guidelines as follows. For Count One, the base offense level is 32 (§2G2.1(a)); the offense involved a 12-year old victim, so a 2-level enhancement applies (§2G2.1(b)(1)(B)); the offense involved the commission of a sexual act, so a 2-level

3

enhancement applies (§2G2.1(b)(2)(A)); the defense involved distribution of child pornography, so a 2-level enhancement applies (§2G2.1(b)(3)); and the defendant misrepresented his identity to persuade the victim to engage in sexually explicit conduct, so a 2-level enhancement applies (§2G2.1(b)(6)(A)) for an adjusted offense level of 40.  PSR ¶¶ 40-49.

For Count Two, the base offense level is 32 (§2G2.1(a)); the offense involved a 14-year old victim, so a 2-level enhancement applies (§2G2.1(b)(1)(B)); the offense involved the commission of a sexual act, so a 2-level enhancement applies (§2G2.1(b)(2)(A)); the offense involved distribution of child pornography, so a 2-level enhancement applies (§2G2.1(b)(3)); the offense involved material that portrayed masochistic conduct, so a 4-level enhancement applies (§2G2.1(b)(4)(A)); and the defendant misrepresented his identity to persuade the victim to engage in sexually explicit conduct, so a 2-level enhancement applies (§2G2.1(b)(6)(A)) for an adjusted offense level of 44.  PSR ¶¶ 50-59.

For Count Three, the base offense level is 32 (§2G2.1(a)); the offense involved a 12-year old victim, so a 2-level enhancement applies (§2G2.1(b)(1)(B)); the offense involved the commission of a sexual act, so a 2-level enhancement applies (§2G2.1(b)(2)(A)); the defense involved distribution of child pornography, so a 2-level enhancement applies (§2G2.1(b)(3)); and the defendant misrepresented his identity to persuade the victim to engage in sexually explicit conduct, so a 2-level enhancement applies (§2G2.1(b)(6)(A)) for an adjusted offense level of 40.  PSR ¶¶ 60-68.

Under the grouping rules, there were 3 units, resulting in an increase of 3-levels (§3D1.4) to a combined adjusted offense level of 47.  PSR ¶¶ 69-72.  A chapter 4 enhancement for repeat and dangerous sex offender applies under §4B1.5(b)(1), increasing the adjusted offense level by 5-levels to 52.  PSR ¶ 73.

The defendant accepted responsibility, and with the 3-level reduction, and the capped total offense level from Chapter 5, Part A (comment 2), the total offense level is 43.  PSR ¶¶ 74-76.

**Relevant Conduct – other victims**

In Goyder's Private Photo Vault albums were folders for additional victims, age-labeled in a similar manner.  Law enforcement was able to identify approximately 40 additional minor victims.  PSR ¶¶ 77-80.  Several of these victims were interviewed, and reported similar abuse.  (VIS from CV #37).

**Criminal History / Prior Convictions**

The defendant has no criminal record, therefore the Criminal History Category should be I. PSR at ¶¶ 81-89.

## I.    OPPOSITION TO FORMAL OBJECTIONS

The defendant identified four grounds for a departure or variance: the criticism of the child pornography guidelines as a whole, double counting of the direction and misrepresentation enhancements, and aberrant behavior, and general 3553(a) factors.  Doc. 36 at 2:24-3:12 and 7:1-9:4; 4:25-5:28; 6:1-4; and 6:9-28.  The government urges the Court to reject these as grounds for a departure because: the case law supports application of the Guidelines; the specific offense conduct applied was not double counting because the defendant directed the individual victims and misrepresented his identity to each victim; this was not aberrant behavior as shown by the number of victims; and the general 3553(a) factors suggest a severe sentence is warranted in this case.  The three legal arguments will be addressed in this section, while the 3553(a) factors will be addressed in the general sentencing discussion.

### A.    The Court Should Apply the §2G2.1 Guidelines

Defendant argued for the Court to express a guidelines disagreement over application of USSG § 2G2.2.  Because these are production offenses, however, §2G2.1 applies.  Criticism of §2G2.2, such as the Sentencing Commission's 2012 Report to Congress: Federal Child Pornography Offenses, does not include specific critiques of §2G2.1, nor did it include any suggested amendments to §2G2.1.  Therefore, this Court should apply §2G2.1.

In *United States v. Henderson*, the Ninth Circuit remanded a child pornography case for resentencing because the record did not permit the Court of Appeals to determine whether the district judge understood that he had the discretion, under *Kimbrough v. United States*, 552 U.S. 85 (2007), to express a policy disagreement with the child pornography guidelines.  *Henderson*, 649 F.3d 955 (9th Cir. 2011).

However, the Ninth Circuit has repeatedly instructed that a district judge is not <u>required</u> to express a policy disagreement with the guidelines.  See *Henderson*, 649 F.3d 955 ("we further emphasize that district courts are not obligated to vary from the child pornography Guidelines on policy

grounds if they do not have, in fact, a policy disagreement with them"); *United States v. Aguirre*, 647 Fed. App'x 750, 752 (9th Cir. 2016) ("The district court was under no obligation to concur with the Commission Report's criticisms and prescriptions and did not err in applying the Guidelines in their current form.")  Even the *Henderson* court observed that "we do not hold that application of § 2G2.2 will always result in an unreasonable sentence and that sentencing courts must continue to consider the applicable Guidelines range as the starting point and the initial benchmark." *Henderson*, 649 F.3d at 964.  Since *Henderson* was decided, the Ninth Circuit has frequently and routinely upheld the substantive reasonableness of within-guidelines child pornography sentences.[1]

Therefore, although this Court is permitted to express a policy dispute with the Guidelines, the Court is not obligated to express such a policy disagreement, and should not do so because the creation and promulgation of the production guidelines in §2G2.1 are materially different from the guidelines for non-production offenses.  Furthermore, the enhancements at issue: the sexual act, distribution, and misrepresentation of identity guidelines,[2] are non-controversial, and logically applied to enhance the defendant's sentence.  This is an aggravated case with multiple victims, and the defendant victimized one victim for approximately four years, resulting in the creation of hundreds of images and videos. There is simply no real basis for the Court to express a policy disagreement with the Guidelines as applied to this defendant.

**B.    The Ninth Circuit Has Concluded that Application of Additional Enhancements for Separate Victims Is not Double Counting**

In *United States v. Wright*, 373 F.3d 935, 942-43 (9th Cir. 2004), the Ninth Circuit rejected an

---

[1] *United States v. Aguirre,* No. 14-10352 (9th Cir. Apr. 5, 2016); *United States v. Mikulak,* 616 Fed. App'x 326 (9th Cir. 2015); *United States v. Sanders,* 558 Fed. App'x 734 (9th Cir. 2014); *United States v. Rice,* 540 F. App'x 782 (9th Cir. 2013); *United States v. Mills,* 518 F. App'x 540 (9th Cir. 2013); *United States v. Maggio,* 499 F. App'x 696 (9th Cir. 2012); *United States v. Frantz,* 485 F. App'x 890 (9th Cir. 2012); *United States v. Grigsby,* 469 F. App'x 589 (9th Cir. 2012); *United States v. Shigley,* 451 F. App'x 705 (9th Cir. 2011); *United States v. Maier,* 639 F.3d 927 (9th Cir. 2011); *United States v. Aguirre,* 448 F. App'x 670 (9th Cir. 2011); *United States v. Alfaro,* 446 F. App'x 840 (9th Cir. 2011); *United States v. Psick,* 434 F. App'x 646 (9th Cir. 2011); *United States v. Aglony,* 421 F. App'x 756 (9th Cir. 2011); *United States v. Anthony,* 421 F. App'x 674 (9th Cir. 2011).

[2] The government notes that the Probation Officer did not apply the "use of a computer" guideline from §2G2.1(b)(6)(B), but rather the "misrepresentation of his identity" guideline from §2G2.1(b)(6)(A).  PSR at ¶¶ 45, 55, 64.  The government further notes that even if the Court has a disagreement with the "use of a computer" guideline, the guideline in §2G2.1 is materially different because it addresses the specific harm of using a computer to persuade or solicit minors to engage in sexually explicit conduct.  *See* §2G2.1(b)(6)(B)(i) and §2G2.1(b)(6)(B)(ii).

argument that applying both the victim under 12 and vulnerable victim enhancements was double counting. The panel noted that the vulnerability of infants and toddlers did not take into account the full vulnerability of extremely young children, including their inability to talk or walk. *Id.*, citing *United States v. Wetchie*, 207 F.3d 634, 634 n. 3,4 (9th Cir. 2000) and USSG § 3A1.1, cmt. n.2. Because each enhancement applied addresses a separate harm, there is no double counting in this case.

There is "no double counting when the district court applies the Sentencing Guidelines' instructions regarding multiple minor victims, as the enhancements were premised on separate exploitative acts." *United States v. Rosenow*, 50 F.4th 715, 741 (9th Cir. 2022) (discussing application of §2G2.1(d)(1)). As stated by the Ninth Circuit in *Rosenow*, "The Sentencing Guidelines' application notes explain that 'each minor exploited is to be treated as a separate minor,' 'multiple counts involving the exploitation of different minors are not to be grouped together,' and 'each such minor shall be treated as if contained in a separate count.'" *Id.*, *quoting* U.S.S.G. §2G2.1(d)(1); U.S.S.G. §2G2.1 comment 7. That is precisely what the Probation Officer did in calculating the Guidelines for each count separately.

Furthermore, in this case, the defendant misrepresented his identity to each of the separate victims, and independently directed the victims to create visual depictions of sexually explicit conduct. Therefore, the enhancements for commission of a sexual act in §2G2.1(b)(2)(B) and misrepresentation of his identity in §2G2.1(b)(6)(A)[3] should apply. PSR at ¶¶ 6-7, 11, 16 (directed sexual acts); 5 (misrepresented identity); ¶¶ 19-23 (directed sexual acts); 18 (misrepresented identity); ¶¶ 26-27 (directed sexual acts); 25 (misrepresented identity). There is no double counting when applying these enhancements to each of the counts when calculating the adjusted offense levels. *Rosenow*, 50 F.4th at 741; PSR at ¶¶ 49, 59, 68. Therefore, the government requests that the Court adopt the Probation Officer's Sentencing Guidelines calculations and overrule the defendant's double counting objections.

C.  **This Is not Aberrant Behavior.**

The government notes that the defendant is not eligible for the aberrant behavior departure

---

[3] Because the Probation Officer did not also apply §2G2.1(b)(6)(B), the defendant's arguments regarding policy disagreements with the "computer enhancement" or double counting of the computer enhancement should not be applicable to this sentencing.

because this is an offense under chapter 110 that is specifically excluded from application of U.S.S.G. §5K2.20 under §5K2.20(a). Regardless, an aberrant behavior departure is appropriate "only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life. U.S.S.G. §5K2.20(b). In this case, the offenses involved significant planning: the defendant researched his victims, where they lived, who they were friends with, and their activities. PSR ¶¶ 5, 18, 25. The defendant used multiple accounts to avoid blocks and to make it appear as if more people had blackmail material. PSR at ¶ 5. Furthermore, the offenses were not of limited duration. The sextortion in Count Two lasted for approximately four years. PSR at ¶¶ 18, 21. Therefore, this Court should not grant a downward departure, nor should it give a variance based on aberrant behavior.

## II. SENTENCING MEMORANDUM

The Court should sentence the defendant to 600 months in prison. This sentence is no greater than necessary to satisfy the sentencing factors in § 3553(a).

### A. A Sentence of 600 Months is Sufficient but not Greater than Necessary

The defendant's advisory guidelines range is 1,080 months (90 years). PSR at ¶¶ 113-114; Doc. 33-1; USSG §5G1.2(b). Because the statutory maximum sentence for each of the sexual exploitation of a child counts is 30 years, the defendant is eligible for a maximum sentence of 90 years. 18 U.S.C. § 2251(e); USSG §5G1.2(b). Although the government believes a lengthy sentence is justified by the defendant's conduct and the Sentencing Guidelines calculations, the government believes that a 600 month (50 year) sentence is more appropriate than a 90-year sentence. The PSR finds nothing in the defendant to warrant either a departure or a variance outside the guidelines. PSR ¶¶ 134-136. There are approximately 43 identified minor victims in this case (out of the approximately 120 albums in defendant's encrypted photo storage app). PSR at ¶¶ 16, 77-78.

1. The nature and circumstances of the offense justifies a lengthy sentence.

The Section 3553 factors also weigh in favor of a sentence of 600 months. The defendant went out of his way to inflict emotional distress on his victims through his demands. PSR at ¶¶ 5-6, 9; 18-19, 21-23; 26-28. While the defendant was not physically present to perform sex acts on the victims or

create the visual depictions, the amount of psychological manipulation he used to force them to create images and videos of themselves was extremely effective. PSR at ¶¶ 5-7; 18-19; 25-26. The defendant also manipulated the victims to enforce compliance. PSR at ¶¶ 9-11; 19-20, 22-23; 26-28. Two of the charged victims reported that the defendant drove them to consider suicide. PSR at ¶¶ 10, 28. The defendant told one of the charged victims to kill herself. PSR at ¶ 28.

2. A lengthy sentence is necessary to deter offenders who victimize multiple victims for a long time, and promote respect for the law.

A lengthy sentence is necessary to deter additional offenders. This case involves a large number of victims. PSR at ¶¶ 77-78. Although not many of them submitted victim impact statements, the statements submitted show the shame and humiliation that the victims went through. PSR at ¶ 31.

The sentence must promote respect for the law. In this case, the defendant used a photo encryption application to try to conceal his activity. PSR at ¶ 16. He told a victim that he didn't "go younger than 12." PSR at ¶ 20. He joked with other chat app users about sexually abusing children. PSR at ¶ 79. The combination of a high number of victims, the type of psychological torture the defendant used to blackmail the victims, the length and breadth of the abuse of the victim in Count Two, and the requests for humiliating or degrading images and videos should result in a lengthy sentence. PSR at ¶¶ 21-22.

3. Defendant's mitigation arguments are not convincing.

Goyder's self-reported history of abuse does not outweigh his exploitation of children. *See United States v. Stoterau*, 524 F.3d 988, 1001-02 (9th Cir. 2008) (rejecting argument that "abuse he suffered as a child, his mental health issues, and his life-long struggle with methamphetamine addiction" mitigated exploitation of a 14-year old victim); PSR ¶ 90. He has not history of trying to address these issues, despite having the means to do so. PSR at ¶¶ 101-102; 106. The government does not believe that the defendant's history and circumstances are so unusual as to render a significant sentence unreasonable. *See id*. (noting that defendant's experiences were not unusual).

4. A 600 month sentence is sufficient, but not greater than necessary.

While the government is not seeking a sentence of 1,080 months, the government believes that a sentence of 600 months would be sufficient, but no greater than necessary for the defendant. The

9

statutory maximum for a hand-on producer of child pornography for each victim with all enhancements applied is 360 months, or 30 years for each count. Therefore, the government is requesting a 600 month sentence that is slightly higher than half of the maximum sentence.

### B. The Court should make specific findings to support the recommended special conditions of supervised release.

Because of the defendant's demonstrated sexual interest in children as young as 12, as well as extreme abuse of children the government believes that a life term of supervised release is justified in this case. PSR at ¶¶ 20, 79. The government also believes that, based on the defendant's demonstrated interest in child pornography (*see* PSR at ¶ 80), his use of social media and the Internet to find victims and research information to further blackmail his victims, and the use of an encrypted photo storage app, the supervised release condition barring the defendant from possessing, owning, using, viewing, or reading adult pornography is appropriate, and requests that the Court make a specific finding that based on the facts in this case, and the characteristics of the defendant, that the special condition is imposed. Special Condition 12, Doc. 33-1 at 5-9. The government concurs in the application of the special conditions recommended by the Probation Officer.

### C. This Court Should Order Restitution.

The government has submitted a mandatory restitution award of $3,181.55 to the victim in Count One.

### CONCLUSION

For all of the foregoing reasons, the government asks the Court to impose a 600 month sentence, followed by a life term of supervised release, with the conditions recommended by the United States Probation Officer, including registration as a sex offender under California law, the mandatory $100 special assessment per count (for a total of $300), and a JVTA assessment of at least $5,000.

Respectfully submitted,

PHILLIP A. TALBERT
Dated: August 8, 2024            United States Attorney

By: /s/ ROGER YANG
ROGER YANG
Assistant United States Attorney

10